Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA BLAU,<br><br>                      Plaintiff,<br><br>          vs.<br><br>FITBIT, INC., JAMES PARK, ERIC N. FRIEDMAN, LAURA J. ALBER, MATTHEW BROMBERG, GLENDA FLANAGAN, BRADLEY M. FLUEGEL, STEVEN MURRAY, and CHRISTOPHER PAISLEY,<br><br>                      Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Martha Blau ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Fitbit, Inc. ("Fitbit" or the "Company") and the members of Fitbit's Board of Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Fitbit will be acquired by Google LLC ("Google") through its wholly owned subsidiary Magnoliophyta Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 1, 2019, Fitbit issued a press release announcing that it had entered into an Agreement and Plan of Merger dated November 1, 2019 (the "Merger Agreement") to sell Fitbit to Google.  Under the terms of the Merger Agreement, the Company's stockholders will receive $7.35 in cash for each share of Fitbit common stock they own (the "Merger Consideration").  The Proposed Transaction has a fully diluted equity value of approximately $2.1 billion.

3.     On December 12, 2019, Fitbit filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Fitbit stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst"); and (ii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Fitbit's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Fitbit.

9. Defendant Fitbit is a Delaware corporation, with its principal executive offices located at 199 Fremont Street, 14th Floor, San Francisco, California 94105.  The Company designs products and experiences that track and provide motivation for everyday health and fitness.  Fitbit's common stock trades on the New York Stock Exchange under the ticker symbol "FIT."

10. Defendant James Park ("Park") is the Company's co-founder and has been a director of the Company since March 2007, President and Chief Executive Officer ("CEO") of the Company since September 2007 and Chairman of the Board since May 2015.  As of December 5, 2019, defendant Park held approximately 34.7% of the total voting power of the Company based on his shares of Fitbit Class A and Class B common stock.

11. Defendant Eric N. Friedman ("Friedman") is the Company's co-founder and Chief Technology Officer. Defendant Friedman has been a director of the Company since March 2007 and an executive officer of the Company since September 2007. As of December 5, 2019, defendant Friedman held approximately 32.1% of the total voting power of the Company based on his shares of Fitbit Class A and Class B common stock.

12. Defendant Laura J. Alber ("Alber") has been a director of the Company since June 2016.

13. Defendant Matthew Bromberg ("Bromberg") has been a director of the Company since March 2018.

14. Defendant Glenda Flanagan ("Flanagan") has been a director of the Company since June 2016.

15. Defendant Bradley Fluegel ("Fluegel") has been a director of the Company since March 2018.

16. Defendant Steven Murray ("Murray") has been a director of the Company since June 2013.

17. Defendant Christopher Paisley ("Paisley") has been a director of the Company since January 2015.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Google is a Delaware limited liability company and wholly owned subsidiary of Alphabet Inc. Google is a technology company that specializes in internet-related services and products with its corporate headquarters located in Mountain View, California.

20. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Google.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Fitbit is a technology company focused on delivering health solutions that impact health outcomes. The Fitbit platform combines wearable devices with software and services to give its users tools to help them reach their health and fitness goals. The Company's wearable devices, which include health and fitness trackers and smartwatches, enable users to view data about their daily activity, exercise, and sleep in real-time. Fitbit's software and services provide users with data analytics, motivational and social tools, and virtual coaching through customized fitness plans and interactive workouts.

22. The core of Fitbit's platform is its wearable devices, which automatically track users' daily steps, calories burned, distance traveled, and active minutes, and display real-time feedback to encourage users to become more active in their daily lives. Most of the wearable devices also measure floors climbed, and sleep duration and quality, and the more advanced products track heart rate, and GPS-based information such as speed, distance, and exercise routes.

23. The Company's platform also includes software to help encourage healthy behavior changes in three areas: activity, sleep, and nutrition. The software includes Fitbit's online dashboard and mobile applications, which wirelessly and automatically sync with Fitbit's devices, enabling users to see trends and achievements, access motivational tools such as coaching and guidance, or connections to the community.

24. On July 31, 2019, Fitbit announced its second quarter 2019 financial results, including revenue of $313.6 million, compared to $299.3 million for the second quarter of 2018, and 3.5 million devices sold, a 31% increase over the second quarter of 2018. Defendant Park commented on the results, stating:

> While we are disappointed to lower guidance for the year, we remain confident in our long-term transformation strategy and have demonstrated good results across key areas of the business. We saw growth in devices sold, increased active users and continued growth in our Fitbit Health Solutions channel, up 42% in the first half of 2019. . . . In addition, we have made progress in diversifying our revenue towards building more predictable, recurring revenue streams with the launch of our premium services in two test markets. We are pleased with the initial results and expect a full launch this fall. Coupled with innovative hardware and software offerings, we believe we're well positioned to bring more users to the Fitbit platform and continue to grow our business.

25. On November 6, 2019, Fitbit announced its third quarter 2019 financial results, including 3.5 million devices sold and an increase in smartwatch revenue compared to the third quarter of 2018. Defendant Park commented on the results, stating:

> In Q3 we continued to make good progress shifting our business towards the faster growing smartwatch category with the introduction of Versa 2, expanding Fitbit Health Solutions, and deepening our relationship with consumers with the launch of Premium. . . . The continued success of the Fitbit brand is built on the trust of our users, and our commitment to strong user privacy and security will not change.

**The Proposed Transaction**

26. On November 1, 2019, Fitbit issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN FRANCISCO, 1 November 2019 - Fitbit, Inc. (NYSE: FIT) today announced that it has entered into a definitive agreement to be acquired by Google LLC for $7.35 per share in cash, valuing the company at a fully diluted equity value of approximately $2.1 billion.
>
> "More than 12 years ago, we set an audacious company vision - to make everyone in the world healthier. Today, I'm incredibly proud of what we've achieved towards reaching that goal. We have built a trusted brand that supports more than 28 million active users around the globe who rely on our products to live a healthier, more active life," said James Park, co-founder and CEO of Fitbit. "Google is an ideal partner to advance our mission. With Google's resources and global platform, Fitbit will be able to accelerate innovation in the wearables category, scale faster, and make health even more accessible to everyone. I could not be more excited for what lies ahead."
>
> "Fitbit has been a true pioneer in the industry and has created terrific products, experiences and a vibrant community of users," said Rick Osterloh, Senior Vice President, Devices & Services at Google. "We're looking forward to working with the incredible talent at Fitbit, and bringing together the best hardware, software and AI, to build wearables to help even more people around the world."

Fitbit pioneered the wearables category by delivering innovative, affordable and engaging devices and services. Being "on Fitbit" is not just about the device - it is an immersive experience from the wrist to the app, designed to help users understand and change their behavior to improve their health. Because of this unique approach, Fitbit has sold more than 100 million devices and supports an engaged global community of millions of active users, utilizing data to deliver unique personalized guidance and coaching to its users. Fitbit will continue to remain platform-agnostic across both Android and iOS.

Consumer trust is paramount to Fitbit. Strong privacy and security guidelines have been part of Fitbit's DNA since day one, and this will not change. Fitbit will continue to put users in control of their data and will remain transparent about the data it collects and why. The company never sells personal information, and Fitbit health and wellness data will not be used for Google ads.
Gmail

The transaction is expected to close in 2020, subject to customary closing conditions, including approval by Fitbit's stockholders and regulatory approvals.

**Insiders' Interests in the Proposed Transaction**

27. Fitbit insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Fitbit.

28. Notably, defendants Park and Friedman have secured positions for themselves with Google upon completion of the Proposed Transaction. According to the Proxy Statement:

> On November 1, 2019, James Park and Google entered into an offer letter (the "Park Offer Letter"). The Park Offer Letter provides that upon and subject to the Closing, Mr. Park will be employed as Vice President, GM & Co-Founder of Fitbit with an annual salary of $475,000. Mr. Park will be eligible to participate in Google's VP Bonus Plan, with an annual target bonus equal to 100% of Mr. Park's annual base salary . . . In recognition of his future services to Google, the Park Offer Letter provides that Mr. Park will be eligible to receive a retention bonus of $16,000,000. . . .
>
> * * *
>
> On November 1, 2019, Eric Friedman and Google entered into an offer letter (the "Friedman Offer Letter"). The Friedman Offer Letter provides that upon and subject to the Closing, Mr. Friedman will be employed as Vice President, Engineering with an annual salary of $450,000. Mr. Friedman will be eligible to participate in Google's VP Bonus Plan, with an annual target bonus equal to 80% of Mr. Friedman's annual

base salary . . . In recognition of his future services to Google, the Friedman Offer Letter provides that Mr. Friedman will be eligible to receive a retention bonus of $7,000,000. . . .

Proxy Statement at 50.

29.     Further, Fitbit directors and executive officers stand to reap substantial financial benefits for securing the deal with Google.  According to the Merger Agreement, certain Fitbit options and restricted stock units ("RSU") will be cancelled and converted into the right to receive cash payments.  As of December 5, 2019, the estimated aggregate value of vested Fitbit options held by the Company's named executive officers is approximately $62,588,666 and the estimated aggregate amount that would become payable to the non-employee directors of the Board in respect of their outstanding Fitbit options and RSUs is approximately $1,368,732.

30.     Moreover, if they are terminated in connection with the Proposed Transaction, Fitbit's named executive officers will receive substantial cash severance payments, as set forth in the following table:

**Golden Parachute Compensation**

| Named Executive Officer | Cash($)[1] | Equity Awards($)[2] | Health Insurance Premiums($)[3] | Total($) |
|---|---|---|---|---|
| James Park[4] | 3,000,000 | 8,348,513 | 14,937 | 11,363,450 |
| Eric Friedman[4] | 796,250 | 3,875,537 | 29,430 | 4,701,217 |
| Ronald Kisling | 739,846 | 2,219,825 | 9,958 | 2,969,629 |
| Andy Missan | 780,362 | 1,567,762 | 30,016 | 2,378,140 |
| Jeff Devine | 704,615 | 1,333,724 | 29,903 | 2,068,242 |

**The Proxy Statement Contains Material Misstatements or Omissions**

31.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Fitbit's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness

opinion provided by the Company's financial advisor, Qatalyst; and (ii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning Qatalyst's Financial Analyses***

33. The Proxy Statement omits material information regarding Qatalyst's financial analyses.

34. The Proxy Statement describes Qatalyst's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Qatalyst's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Fitbit's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of the Company; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 12.5% to 16.5%; (iii) the forecasted tax attributes outstanding as of December 31, 2023; (iv) the Company's cash as of September 28, 2019; (v) the implied perpetuity growth rates resulting from the analysis; and (vi) the number of fully diluted shares of Fitbit common stock.

36. With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose the Analyst Projections utilized by Qatalyst in the analysis.

37. Without such undisclosed information, Fitbit stockholders cannot evaluate for themselves whether the financial analyses performed by Qatalyst were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully

evaluate the extent to which Qatalyst's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

38.     The omission of this material information renders the statements in the "Opinion of Fitbit's Financial Advisor" and "Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

39.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Fitbit insiders.

40.     The Proxy Statement sets forth that:

> Representatives of Cleary Gottlieb informed Fenwick & West that Google desired, subject to the authorization of our Board, to negotiate post-closing employment agreements with each of Mr. Park and Eric Friedman, our chief technology officer, prior to entering into the merger agreement. A representative of Fenwick & West informed representatives of Cleary Gottlieb that our Board would not authorize Messrs. Park and Friedman to engage in such discussions until the negotiations regarding the principal terms of the merger agreement had been substantially advanced. The representative of Fenwick & West also proposed to representatives of Cleary Gottlieb that neither Mr. Park nor Mr. Friedman would enter into a voting, support or similar agreement or arrangement regarding their votes as stockholders to adopt the merger agreement.

*Id.* at 33. On October 26, 2019, the Board "approved permitting Messrs. Park and Friedman to enter into negotiations with Google regarding post-closing employment arrangements." *Id.* at 34. Defendants Park and Friedman subsequently secured positions for themselves as Vice President, GM & Co-Founder and Vice President, Engineering, respectively, with the combined company upon consummation of the Proposed Transaction. The Proxy Statement, however, fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Google and Fitbit directors and executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose

whether any of Google's prior proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

42. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of our Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Fitbit will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Qatalyst and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff isthreatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Fitbit, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-

making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Fitbit's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Fitbit, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Fitbit stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 19, 2019

**WEISSLAW LLP**
Joel E. Elkins

By: /s/ Joel E. Elkins

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
         -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*